J-S44033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID WILLOUGHBY, | : | |
| | : | |
| Appellant | : | No. 1710 EDA 2015 |

Appeal from the PCRA Order May 29, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0014671-2010

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED JULY 19, 2016**

David Willoughby ("Willoughby") appeals from the Order dismissing his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  *See* 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court set forth the relevant factual and procedural history in its Pa.R.A.P. 1925(a) Opinion, which we incorporate herein by reference. *See* PCRA Court Opinion, 12/10/15, at 1-4.[1]

In response to the filing of Willoughby's appeal, the PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Willoughby timely filed a Concise Statement, after which the PCRA court issued its Pa.R.A.P. 1925(a) Opinion.

On appeal, Willoughby presents the following issues for our review:

---

[1]  At trial, Willoughby was represented by Holly Dobrosky, Esquire (hereinafter "trial counsel").

I.   Whether the [PCRA] court erred by [dismissing Willoughby's] PCRA Petition[?]

II.  Whether the [PCRA] court erred by not granting [Willoughby's] PCRA [Petition] based on trial counsel's failure to confront [the] complainant[,] K[.]C[.] ["K.C.,"] on the proposed testimony of defense witness Ali Bey ["Bey"], thus prohibiting Bey's testimony at trial[?]

III. Whether the [PCRA] court erred by not granting [Willoughby's] PCRA [Petition] based on trial counsel's failure to object to numerous comments made by [the] trial judge[?]

IV.  Whether the [PCRA] court erred by not granting [Willoughby's] PCRA [Petition] based on trial counsel's failure to object to an incomplete and misleading jury instruction regarding aggravated assault[?]

Brief for Appellant at 4 (issues renumbered for ease of disposition; some capitalization and footnotes omitted).

> Our standard of review of the [dismissal] of a PCRA petition is limited to examining whether the evidence of record supports the [PCRA] court's determination and whether its decision is free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. We give no such deference, however, to the court's legal conclusions.

**Commonwealth v. Secreti**, 134 A.3d 77, 79-80 (Pa. Super. 2016) (citations omitted).

Each of Willoughby's above-mentioned claims, raised in his timely PCRA Petition, alleges that trial counsel rendered ineffective assistance. To succeed on such a claim, Willoughby must demonstrate by the preponderance of the evidence that

- 2 -

(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to be effective, and the burden is on the appellant to prove otherwise. *Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011).

Willoughby first argues[2] that the PCRA court erred by failing to rule that trial counsel was ineffective for not confronting the victim, K.C., at trial with the proposed testimony of defense witness Bey. *See* Brief for Appellant at 30-33. According to Willoughby, Bey would have testified that, prior to trial, K.C. admitted to Bey that she was not raped[3] (hereinafter referred to as "the alleged prior inconsistent statement"). *Id.* at 30. Willoughby points out that the trial court's ruling that, because trial counsel never confronted K.C. on cross-examination with the alleged prior inconsistent statement, the

---

[2] We will not separately address the first "issue" listed in Willoughby's Statement of Questions Presented, *supra*, as it is a general claim that the PCRA court improperly dismissed the PCRA Petition; his argument section concerning this issue merely restates the three remaining substantive issues he raises. *See* Brief for Appellant at 23.

[3] Specifically, trial counsel stated that, if called as a witness, Bey would testify that, "on the evening of the preliminary hearing, [K.C.] called [Bey] and said that everything was blown out of proportion; she [K.C.] didn't tell the police it was a rape …. [S]o it shows [K.C.'s] own admission that she's lying here in court today …." Brief for Appellant at 30 (quoting N.T., 10/5/11, at 325).

defense was precluded from presenting this evidence. *Id.* Willoughby contends that the PCRA court conceded that trial counsel had no reasonable basis not to confront K.C. with the alleged prior inconsistent statement. *Id.* at 32 (citing PCRA Court Opinion, 12/10/15, at 8). However, according to Willoughby, the PCRA court erred in finding that trial counsel's omission did not cause Willoughby actual prejudice (and, therefore, Willoughby failed to meet all three prongs of the ineffectiveness test), as the alleged prior inconsistent statement "is significant and calls into question the only[] direct evidence [that] a reasonable jury could use to convict [Willoughby]." Brief for Appellant at 32-33; *see also id.* at 32 (asserting that "[s]ince this is a case of she said, he said, the jury's evaluation of [K.C.'s] testimony is so significant[] that the failure to allow a defense witness who intended on contradicting [K.C.] is the clearest example of prejudice one could find in a case.").

In its Opinion, the PCRA court thoroughly addressed this ineffectiveness claim, set forth the applicable law, and determined that it fails because Willoughby did not establish the prejudice prong of the ineffectiveness test. *See* PCRA Court Opinion, 12/10/15, at 6-14; *see also Commonwealth v. Hutchinson*, 811 A.2d 556, 562 (Pa. 2002) (noting that in the absence of a showing of prejudice, a PCRA petitioner's ineffectiveness claim "necessarily fails"). We affirm on this basis with regard to Willoughby's first claim. *See* PCRA Court Opinion, 12/10/15, at 6-14.

Next, Willoughby asserts that the PCRA court improperly failed to grant him collateral relief based on his claim that trial counsel was ineffective for failing to object to numerous prejudicial and improper comments made during trial by the trial court judge, the Honorable John J. O'Grady, Jr. ("Judge O'Grady"). Brief for Appellant at 24. According to Willoughby, on approximately thirteen separate occasions,[4] Judge O'Grady made comments that allegedly showed the court's (1) bias against Willoughby; (2) "extreme favoritism towards the prosecution"; and (3) "condemnation directed at [] trial counsel." *Id.*; *see also id.* at 25 (asserting that Judge O'Grady "interjected himself into direct and cross-examination by commenting on the evidence, answering for the witnesses, characterizing and summarizing the witness's testimony, and providing his own argument[.]"). Willoughby points out that, on direct appeal, this Court

---

[4] In his brief, Willoughby specifically identifies only three instances of Judge O'Grady's allegedly improper commentary. *See* Brief for Appellant at 26-27. Concerning the remaining instances, Willoughby merely provides page citations to the trial transcript, requiring this Court to guess as to which specific comments he objects. *Id.* at 24. He also fails to specify what type of relief he wanted trial counsel to request, had counsel objected to the comments. Moreover, in Willoughby's court-ordered Pa.R.A.P. 1925(b) Concise Statement, he did not identify the place in the record where **any** of the challenged comments appear. *See* Pa.R.A.P. 1925(b)(4)(ii) & (vii) (providing, respectively, that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues for the judge**[,]" and that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph [] are waived." (emphasis added)); *see also Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (stating that a "court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised." (citation omitted)). We decline to find waiver on this basis.

ruled that he had waived his challenge to Judge O'Grady's comments, because trial counsel failed to lodge a timely objection at trial. *Id.* at 24-25; *see also Commonwealth v. Willoughby*, 102 A.3d 525 (Pa. Super. 2014) (unpublished memorandum at 5-7); *id.* at 7 (stating that "we are compelled to conclude that [Willoughby's] [] issue is waived, without prejudice to his ability to raise an ineffective assistance of counsel argument in a timely-filed PCRA petition.").

Our review of the trial transcript confirms the PCRA court's determination that Willoughby failed to establish that his underlying claim is of arguable merit, as none of Judge O'Grady's comments exhibited bias, overreaching, or impropriety by the court. *See* PCRA Court Opinion, 12/10/15, at 14-15;[5] *see also Commonwealth v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995) (holding that "simply because a judge rules against a defendant [at trial] does not establish any bias against that defendant. If the appellate court determines that the party alleging judicial bias received a fair trial, then the allegation of judicial bias is not borne out."); *Commonwealth v. King*, 549 A.2d 195, 197 (Pa. Super. 1988) (holding that defense counsel was not ineffective for failing to object when there was

---

[5] Moreover, we observe that on direct appeal, the trial court, in response to Willoughby's claim asserting improper/prejudicial comments by Judge O'Grady, stated that "[e]ven assuming that the trial court's remarks were unwise, none of them were made during the final charge, and none of them instructed (or even hinted to) the jury as to what the facts were against [Willoughby]." Trial Court Opinion, 7/1/13, at 8. This assertion is supported by the record.

no arguable merit to the underlying claim that the trial court judge had improperly asked a question of a witness). Rather, regarding Judge O'Grady's comments that Willoughby appears to challenge, the court was merely clarifying facts for the jury, curbing trial counsel's repetitive cross-examination in belaboring a point, and otherwise keeping the questioning proper and on-track. **See Commonwealth v. Purcell**, 589 A.2d 217, 224 (Pa. Super. 1991) (stating that it is not improper for a trial judge to clarify facts, and "[i]t is not partisan to maintain the wheel, steering evenly, between competing and often aggressive counsel, anxious to set the course." (citation omitted)); **see also Commonwealth v. Meadows**, 787 A.2d 312, 318 (Pa. 2001) (stating that "the court may summarize the evidence and note possible inferences to be drawn from it …, provid[ed] that the statements have a reasonable basis and it is clearly left to the jury to decide the facts, regardless of any opinion expressed by the judge." (citation omitted)).

Moreover, our review discloses that at no point did Judge O'Grady express an opinion as to Willoughby's guilt or innocence, or the credibility of any of the witnesses; thus, there was no basis for trial counsel to object. **See Commonwealth v. Hughes**, 865 A.2d 761, 793 (Pa. 2004) (citing **Meadows**, 787 A.2d at 318 (stating that "the court may not comment on, or give its opinion of, the guilt or innocence of the accused.")).

Finally, immediately prior to deliberations, Judge O'Grady instructed the jury as follows: "You, the jurors, are the sole judges of the facts. It is your responsibility to consider the evidence and determine the facts. You alone will apply these facts to the law …." N.T., 10/6/11, at 358. Thus, even assuming, *arguendo*, that any of Judge O'Grady's remarks were improper, the above instruction minimized the possibility of undue prejudice to Willoughby. **See Commonwealth v. Leonhard**, 485 A.2d 444, 446-47 (Pa. Super. 1984) (holding that even "harsh" comments of the trial court, referring to the defendant's evidence as "very, very sparse," did not cause defendant undue prejudice, where the court instructed the jurors that they were the sole judges of the facts). It is presumed that the jury followed the court's instructions. **Commonwealth v. Spotz**, 896 A.2d 1191, 1224 (Pa. 2006). Accordingly, Willoughby's second claim of trial counsel's ineffectiveness does not entitle him to relief.

In his final issue, Willoughby argues that trial counsel was ineffective for failing to object to an "incomplete and misleading" jury instruction that Judge O'Grady issued regarding the charge of aggravated assault. **See** Brief for Appellant at 28-30. Willoughby points out that trial counsel's failure to object resulted in the waiver of his challenge to the instruction on direct appeal. **Id.** at 28; **see also Willoughby**, 102 A.3d 525 (unpublished memorandum at 7). Specifically, Willoughby challenges Judge O'Grady's supplemental instruction given in response to a jury question regarding the

"serious bodily injury" element of aggravated assault. Brief for Appellant at 28-29. Willoughby contends that Judge O'Grady "improperly re-read only the prosecution-select[ed] portion of the charge, instead of re-reading the entire aggravated assault charge, so that the fragmented portion could be placed in its proper context." *Id.* at 28.

Our standard of review concerning a challenge to a jury charge requires us to determine

> whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. In so doing, we must view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge. [Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations. It is well-settled that the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013) (citations and quotation marks omitted).

Pennsylvania Rule of Criminal Procedure 647(C) authorizes the trial court to provide additional instructions to the jury after the jury has retired to consider its verdict. Pa.R.Crim.P. 647(C).

> The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. … [W]here a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.

*Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa. Super. 2001) (citations omitted).

- 9 -

In its Opinion, the PCRA court determined that this ineffectiveness claim fails because Willoughby did not demonstrate that the underlying claim was of arguable merit. *See* PCRA Court Opinion, 12/10/15, at 15. In so ruling, the PCRA court relied upon the analysis previously offered by the trial court on direct appeal, wherein the court stated as follows:

> [A]fter counsel made their closing arguments, the trial court instructed the jury on the aggravated assault charge by reading Pennsylvania Suggested Standard Criminal Jury Instruction 15.2702A, "Aggravated Assault – Attempted Serious Bodily Injury." During deliberations, the jury requested the trial court to repeat the aggravated assault instruction. After the re-reading [of] the aggravated assault instruction, juror number six inquired about the serious bodily injury portion of the charge. The trial court re-read the definition of serious bodily injury. …
>
> … Even if the alleged error was not waived[, *i.e.*, by trial counsel's failure to object to the supplemental instruction,] the trial court's charge clearly, adequately, and accurately stated the law on aggravated assault. Moreover, the trial court was well within its discretion to repeat the aggravated assault instruction to the jury, particularly when requested to do so by the jury.

Trial Court Opinion, 7/1/13, at 7-8. We agree with the court's determination.

Contrary to Willoughby's claim, Judge O'Grady was not required to reread the full instruction on aggravated assault; the court properly focused only on the portion of the instruction about which juror number six had inquired. *See Davalos*, *supra* (noting that "[t]he scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge."); *Commonwealth v. Akers*, 572 A.2d 746, 755 (Pa. Super. 1990) (stating that a trial court "may properly confine

- 10 -

supplemental instructions to the particular question asked by the jury despite a defendant's request for additional instructions.") (citation omitted); *see also Scott*, 73 A.3d at 602 (stating that a "trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.") (citation omitted). Here, Judge O'Grady's supplemental instruction accurately conveyed the law on serious bodily injury. Furthermore, Willoughby has not established that he was prejudiced by Judge O'Grady's decision to confine the supplemental instruction to only the question asked by the jury. *See Hutchinson*, *supra*; *Akers*, *supra*.

Based upon the foregoing, we conclude that the PCRA court properly determined that Willoughby failed to prove his claims of trial counsel's ineffectiveness. Accordingly, the court did not err or abuse its discretion in dismissing Willoughby's first PCRA Petition.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016

- 11 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :    CP-51-CR-0014671-2010

**FILED**

VS. :    1710 EDA 2015

DEC 10 2015 :


CP-51-CR-0014671-2010 Comm. v. Willoughby, David
Opinion

DAVID WILLOUGHBY    Criminal Appeals Unit
First Judicial District of PA
OPINION

7380705901

Defendant David Willoughby appeals from the PCRA court's dismissal of his Petition

under the Post Conviction Relief Act ("PCRA"). On appeal, Defendant argues that the PCRA

court erred in dismissing the PCRA petition because trial counsel was ineffective for failing to:

(1) confront the rape victim regarding statements she allegedly made to defense witness Ali Bey;

(2) object to numerous comments made by the trial court during trial; and (3) object to an

allegedly incomplete and misleading jury instruction regarding the aggravated assault charge.

For the reasons stated herein, the Superior Court should affirm the PCRA court's order

dismissing the PCRA petition.[1]

## FACTUAL BACKGROUND[2]

Defendant and the complainant, K.C., were previously in a relationship. Shortly after

5:00am on Friday, October 8, 2010, Defendant repeatedly called K.C. on both her house and cell

phones. He went to her house, implored her to open the door, and said that he "just wanted to

talk" to K.C. Frightened, K.C. called her friend Kevin who then contacted the police after

listening to some of the conversation between Defendant and K.C. via a three-way call.

---

[1] Judge John O'Grady retired prior to sentencing Defendant. Judge Daniel Anders was administratively assigned this matter for sentencing. For purposes of this opinion, "trial court" refers to Judge O'Grady, and "sentencing court" and "PCRA court" refer to Judge Anders.

[2] The entire Factual Background is from the Trial Court's Opinion, 07/01/2013 at 2-4 (citations to the record omitted).

Police Officer Alexander DeJesus arrived at K.C.'s house at 6:18am and observed Defendant coming out of K.C.'s backyard. Officer DeJesus took down Defendant's information and then spoke with K.C., who requested that Defendant leave the residence. Officer DeJesus instructed Defendant to leave K.C.'s property.

Later that morning, K.C. was with her two children at a bus stop when Defendant unexpectedly showed up in his car. He told K.C., "I didn't want you on the bus. I just want to talk to you." K.C. entered Defendant's car because her children were already inside the car. Defendant dropped off K.C.'s son at Cassidy Elementary School and then went to Little Shepherds Christian Learning Center to drop off K.C.'s daughter. At the learning center, Defendant again implored K.C. to "give [him] a small conversation" and said that he just wanted to talk to her. K.C. agreed to get back into the car after Defendant threatened to tase her and told her, "I would drag you" and "you know it would cause a scene." Defendant drove K.C. to his house and told her that "you're coming in with me." After initially refusing, K.C. entered Defendant's home at around 9:00am.

Once inside his house, Defendant, who has a boxing background, told K.C., "look, you're playing with me" and smacked K.C. across her face. Defendant then took K.C.'s phone and said, "you're not going anywhere." After being struck in the face, K.C. tried to leave the house but Defendant pushed her. He told her to "get comfortable" and that she was not going anywhere. Defendant began to question K.C. about her current boyfriend Joseph Grant; K.C. refused to answer Defendant's questions. Her refusal led Defendant to punch, push, sit on, choke, and attempt to burn K.C. She tried to fight back, but Defendant's repeated punches up and down the side of K.C.'s body and in her ribs forced K.C. to accept that the only thing she could do was "ball up" in an effort to protect herself. In addition to hitting K.C., Defendant threw water on her,

-2-

banged her head against the wall, and verbally demeaned her. At one point, Defendant went to the kitchen and got a knife.

Defendant then forced K.C. to go up the steps and told her, "you know I'm gonna fuck you, right?" K.C. responded that she did not want to have sex with Defendant. Defendant then told K.C., "take off your clothes or I'm gonna rip your clothes off." After being instructed to "get the dick," K.C. performed oral sex on Defendant, but did so because she was beaten to the point of "submission." K.C. was not able to open her mouth to perform oral sex sufficiently enough for Defendant to climax. Defendant then began having vaginal intercourse with K.C., despite her pushing and hitting him to get off. Defendant became more aroused as K.C.'s resistance increased.

Defendant later drove K.C. to her son's football practice at around 6:00pm, where she was able to get in contact with Joseph Grant and tell him what had happened. K.C.'s daughter had to be picked up by K.C.'s grandfather at day care, due to K.C. not being able to leave Defendant's house. Grant testified that K.C. "looked like crap" when he arrived at football practice. Grant had been concerned throughout the day because he had not been able to contact K.C. K.C. did not initially want to go to the hospital, but because she was in so much pain she went to Lankenau Hospital on October 12, 2010, where she was found to have bruising. K.C. talked to police at the hospital and was later interviewed by Detective Sweeney.

PROCEDURAL HISTORY

On October 6, 2011, a jury convicted Defendant of rape, involuntary deviate sexual intercourse ("IDSI"), aggravated assault, and sexual assault. On February 29, 2012, the sentencing court imposed a sentence of concurrent, mandatory terms of 10 to 20 years of incarceration for the rape and IDSI convictions, and a consecutive sentence of 5 to 10 years of incarceration for the aggravated assault conviction.

-3-

On July 24, 2012, Defendant filed a timely notice of appeal in which he argued that: (1) the evidence at trial was insufficient to support the aggravated assault conviction; (2) the aggravated assault conviction was against the weight of the evidence; (3) the trial court gave an improper jury instruction on the aggravate assault charge; (4) the trial court made prejudicial and biased comments during trial that deprived Defendant of a fair and impartial trial; (5) the trial court erred when it precluded defense witness Ali Bey from testifying; and (6) the sentencing court imposed a sentence that was unduly harsh and excessive.

On June 30, 2013, the sentencing court issued an opinion that addressed each of Defendant's claims of error. On April 9, 2014, the Superior Court issued an opinion that held that Defendant's claims of error regarding the trial court's comments during the trial and the jury instruction for aggravated assault were waived and that all of the remaining claims of error were without merit.

On April 17, 2014, Defendant filed a timely PCRA petition alleging trial counsel was ineffective for failing to: (1) confront the rape victim regarding statements she allegedly made to defense witness Ali Bey; (2) object to numerous comments made by the trial court during trial; and (3) object to an allegedly incomplete and misleading jury instruction regarding the aggravated assault charge. On November 20, 2014, the Commonwealth filed a motion to dismiss Defendant's PCRA petition. On May 8, 2015, the PCRA Court issued a 907 Notice following oral argument. On May 29, 2015, the PCRA court formally dismissed Defendant's entire PCRA petition as without merit. On June 1, 2015, Defendant filed a timely appeal of the PCRA court's order dismissing his PCRA petition.

DISCUSSION

In *Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009), our Supreme Court set forth the standards governing claims brought pursuant to the PCRA alleging ineffective assistance of counsel:

-4-

Under the PCRA, collateral relief is afforded to individuals who prove that they are innocent of the crimes of which they were convicted, and those receiving illegal sentences. 42 Pa.C.S. § 9542. "A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S. § 9543(a)(2)." *Commonwealth v. Natividad*, 938 A.2d 310, 320 (Pa. 2007). One of the grounds enumerated in 42 Pa.C.S § 9542(a)(2) involves claims alleging ineffective assistance of counsel. Thus, the PCRA provides relief to those individuals whose convictions or sentences "resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9542(a)(2)(ii). This Court has interpreted this to mean that in order to obtain relief on a claim alleging ineffective assistance of counsel, a petitioner must prove that: (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner. *Commonwealth v. Collins*, 957 A.2d 237 (Pa. 2008); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998)). "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Finally, the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 n.10 (Pa. 2000).

*Cox*, 983 A.2d at 678.

The standard of review for an appeal from the denial of PCRA relief is "whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth*

-5-

*v. Gwynn*, 943 A.2d 940, 944 (Pa. 2008). "The level of deference accorded to the post-conviction court may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined." *Commonwealth v. Williams*, 950 A.2d 294, 299 (Pa. 2008). "The PCRA court's factual determinations are entitled to deference, but its legal conclusions are subject to plenary review." *Commonwealth v. Gorby*, 900 A.2d 346, 363 (Pa. 2006).

A judge may dismiss a PCRA petition without a hearing if: (1) the petition is patently frivolous and without support in the record; or (2) the facts alleged therein would not, even if proven, entitle the defendant to relief. *See* Pa.R.Crim.P. 907; *Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. Ct. 2010) (stating, "It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence."). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. Ct. 2008).

1.  The PCRA Court Properly Dismissed Defendant's Petition Alleging Ineffective Assistance of Counsel for Failing to Confront Rape Victim K.C. Regarding Statements She Allegedly Made To Defense Witness <u>Ali Bey Because Defendant Failed To Prove Actual Prejudice</u>

In his first claim of error, Defendant asserts that the PCRA court improperly denied his claim that trial counsel was ineffective for failing to confront rape victim K.C. about a conversation she allegedly had with defense witness Bey regarding statements she made to the police about her rape. The PCRA court properly dismissed this claim because Defendant did not prove that trial counsel's failure caused him actual prejudice.

-6-

## a. Defendant's First Claim Has Arguable Merit

As an initial matter, the PCRA court determined that Defendant's claim had arguable merit because trial counsel did not comply with the requirements of Pa.R.E. 613(b), specifically, the requirements governing the admission of extrinsic evidence of a witness's prior inconsistent statements.[3] At sidebar during the trial, trial counsel proffered what Bey's testimony would have been:

> On the evening of the preliminary hearing, K.C. called him and said that everything was blown out of proportion; she didn't tell the police it was rape – they were her words – and that she admits that she said things that she shouldn't have, so it shows her own admission that she's lying here in court today, and it's something the jury should hear.

N.T. 10/05/2011 at 325. The trial court precluded Bey from testifying about his conversation with K.C. because trial counsel failed to confront K.C. with her alleged statements to Bey during cross-examination of K.C. earlier in the trial. As a result, Defendant's first claim of ineffectiveness has arguable merit because trial counsel failed to lay the appropriate foundation under Rule 613(b) for the admission of extrinsic evidence of the alleged statements, *i.e.*, to allow Bey to testify regarding K.C.'s statements. Sentencing Court Opinion (Anders, J., filed 07/01/2013) at 9-10; *see also* Superior Court Opinion at 11 (holding that the trial court did not abuse its discretion in excluding Bey's testimony because trial counsel failed to comply with Rule 613(b)).

---

[3] Pennsylvania Rule of Evidence 613(b) permits the introduction of extrinsic evidence of an alleged prior inconsistent statement by a witness only if, during cross examination of the witness: (1) the contents are disclosed to the witness; (2) the witness is given an opportunity to explain or deny the making of the making of the statement; and (3) the opposite party is given the opportunity to question the witness. *See* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 613.08 (2015 ed. LexisNexis Matthew Bender).

b. Trial Counsel Had No Reasonable Basis To Fail To Confront K.C.

The PCRA court also determined that there was no reasonable basis for trial counsel not to confront K.C. about her alleged statements to Bey during counsel's cross-examination of K.C. At sidebar during the trial, counsel explained why she did not confront K.C. with her alleged statements to Bey: "[T]he reason why I didn't ask her on cross-examination is because well, I knew she would deny it and I thought we'd get it from the horse's mouth." N.T. 10/05/2011 at 327; N.T. 05/08/2015 at 5. Instead of laying the appropriate foundation under Rule 613(b) by confronting K.C. with the statements during cross-examination, trial counsel incorrectly thought she could get the same evidence from Bey without first confronting K.C. As such, trial counsel's failure to confront K.C. with her alleged prior inconsistent statements to Bey lacked any reasonable basis because she failed to understand Rule 613(b) and how to admit that evidence at trial.[4]

c. Defendant Failed To Prove Actual Prejudice

Although the first claim of ineffectiveness satisfies the first two prongs of an ineffectiveness claim, Defendant is not entitled to PCRA relief because Defendant failed to prove that trial counsel's actions resulted in actual prejudice to him.

i. Defendant Has The Burden To Prove *Strickland* Prejudice

"Prejudice," as articulated in *Strickland* and *Pierce*, requires the defendant to show that "trial counsel's omission had an actual adverse effect on the outcome of the proceedings such that [Defendant] is entitled to a new trial." *Commonwealth v. Spotz*, 84 A.3d 294, 317 (Pa. 2014); *Commonwealth v. Gribble*, 863 A.2d 455, 472 (Pa. 2004). The Pennsylvania Supreme Court

---

[4] K.C.'s statements to Bey were not admissible under any other Rule of Evidence. *See* Superior Court Opinion at 10-11 (finding that K.C.'s statements were not admissible as a statement by a party-opponent).

clarified the standard of proof required to establish prejudice in a PCRA claim and distinguished it from the harmless error standard on direct appeal:

> [A] defendant [raising a claim of ineffective assistance of counsel] *is required to show actual prejudice*; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' *Pierce*, 527 A.2d at 977. *This standard is different from the harmless error analysis* that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*, 383 A.2d [155], 164 [(Pa. 1978)] (citations omitted), states that "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard...."

*Spotz*, 84 A.3d at 315 (emphasis added). Thus, to establish the requisite prejudice, the defendant "must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have different." *Id.* at 320-21.

### ii. Claims Of Actual Prejudice Where Counsel Fails To Call Or Impeach A Witness At Trial

Where trial counsel fails to call a particular witness at trial, our Supreme Court expressly declined to adopt a *per se* finding of actual prejudice. *Commonwealth v. Johnson*, 966 A.2d 523, 538 (Pa. 2009). Instead, the defendant "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Id.* at 536; *Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense."). "The question for the PCRA court is not whether the jury in fact would have credited [the defendant's] new evidence.... Instead, the question is whether the nature and quality of the evidence is such that there is a

reasonable probability that the jury would have credited it and rendered a more favorable verdict. That assessment must include recognition of the impeachability of the witnesses, and not merely a viewing of their testimony in a most favorable light." *Johnson*, 966 A.2d at 542.

Similarly, where trial counsel fails to cross-examine a witness at trial with a prior inconsistent statement, the omission of the witness's prior statement does not automatically "cast substantial doubt on the veracity" or credibility of that witness's testimony. *Commonwealth v. Luster*, 71 A.3d 1029, 1043-44 (Pa. Super. Ct. 2013). In *Luster*, the Superior Court considered whether cross-examination by trial counsel regarding the inconsistencies in the statements would have changed the outcome of the trial. *Id.* at 1044. The court determined it would not because (1) the inconsistencies could be explained by the circumstances surrounding the making of the statement, and (2) independent evidence—a 911 recording of a male who was assaulting the victim in a car, the defendant's admission that he was the male with the victim in her car on the night she was killed and had an intense argument with her, and the physical evidence of bruising and strangulation marks on the victim's neck—supported the defendant's guilt. *Id.* at 1043-44, 1047. Thus, the Superior Court held that defendant was not entitled to PCRA relief because he failed to prove actual prejudice based upon trial counsel's failure to cross-examine a witness regarding a prior inconsistent statement.[5]

---

[5] *See also Commonwealth v. Treiber*, 121 A.3d 435, 457 (Pa. 2015) (defendant failed to establish actual prejudice related to trial counsel's failure to impeach a witness on cross-examination with evidence of his reputation dishonesty, *crimen falsi* for his juvenile adjudication, and bias); *but see Commonwealth v. Weiss*, 606 A.2d 439, 440-43 (Pa. 1992) (finding actual prejudice where trial counsel failed to present available character witnesses that were favorable to defendant and unfavorable to defendant's wife's testimony; "where there are only two direct witnesses involved, credibility of the witness is of paramount importance, and character evidence is critical to the jury's determination of credibility"). *Weiss* is easily distinguished because that case involved the failure to introduce favorable character testimony, which, in itself, can cause a jury to have reasonable doubt.

iii.      Defendant Cannot Prove Actual Prejudice

There are four interrelated reasons why Defendant cannot prove that he suffered actual prejudice from trial counsel's failure to confront K.C. with her alleged prior inconsistent statement.

First, at trial, defense counsel repeatedly attacked the credibility of K.C.'s testimony including impeaching her on several occasions, questioning the veracity of her testimony, and suggesting substantial motives to fabricate the sexual assault. Notwithstanding these repeated attacks on her credibility, impeachment with prior statements, and suggested motives to fabricate her testimony, the jury credited K.C.'s testimony that Defendant sexually assaulted her by finding him guilty of all charges.

- Trial counsel attempted to impeach K.C.'s credibility by comparing her testimony at trial that she did not suffer any broken bones with her testimony at the preliminary hearing that she suffered a fractured rib; medical records confirmed no broken or fractured bones. N.T. 10/04/2011 at 131; 10/05/2011 at 207, 286.

- Trial counsel argued that K.C. reported her car stolen as motive to retaliate against Defendant and to fabricate the rape. N.T. 10/04/2011 at 136-38, 199.

- Trial counsel attempted to impeach K.C.'s credibility by comparing her testimony at trial that she did not know about the police or panic button on the alarm system at Defendant's house with testimony from Fred Dean that he observed K.C. use the panic button previously. *Id.* at 161; 10/05/2011 at 309.

- Trial counsel argued the incredibility of K.C.'s testimony by questioning why she did not attempt to leave Defendant's house, call anyone, or go to the front door or window to obtain help during the two hours that Defendant was not in the house (3pm to 5pm) on the date of the sexual assault. N.T. 10/04/2011 at 162-68.

- Trial counsel attempted to impeach K.C.'s credibility by comparing her testimony at trial that she did not suffer a black eye with her testimony at the preliminary hearing that she suffered a black eye. N.T. 10/05/2011 at 219-20, 286.

- Trial counsel argued that K.C. had a motive to retaliate against Defendant and to fabricate the rape because she was controlling, she wanted to make Defendant's life miserable, and she desired to get him locked up. *Id.* at 226-27, 232. K.C. denied lying to get back at him.

-11-

- Trial counsel argued the incredibility of K.C.'s testimony that Defendant punched and manhandled K.C. by admitting testimony from George Weldon and Wesley Hall that Defendant had hernia surgery and had limited physical ability in October 2010 due to the hernia surgery. *Id.* at 294-95, 315-16.

Second, as in *Luster*, there was direct and circumstantial evidence at trial from independent sources that corroborated K.C.'s trial testimony including medical records, phone records, photographs of K.C.'s injuries, her employment records, and daycare records.

- The three-way call between K.C., Defendant, and Kevin resulting in a police officer's arrival to her house on the day prior to the sexual assault corroborates K.C.'s and Defendant's hostile relationship, *e.g.*, Defendant's threats to kick down the door to her house. Also, K.C.'s cell phone records confirm the fact of the three-way call and further provides circumstantial evidence that Kevin (not K.C.) called the police in response to Defendant's threats. N.T. 10/04/2011 at 75-78, 92-93.

- The photographs taken the day after the attack and K.C.'s medical records are independent corroborating evidence of K.C.'s injuries, *i.e.*, the photographs show extensive bruising to her chest and on both sides of her ribs and the hospital report notes bruising all over her body and chest. *Id.* at 105-08, 127, 132-33.

- K.C.'s phone records are circumstantial evidence that Defendant took K.C.'s phone on the day of the sexual assault because there was no phone activity between 8:00am and 6:15pm. *Id.* at 93-94, 117, 121; 10/05/2011 at 252-53.

- The timesheet signed by K.C. indicates that she logged into work at Cosmopolitan Luxury Rental Residences on October 7, 2010, but failed to log into work on October 8, 2010, which was the date of the sexual assault. The termination letter, dated October 13, 2010, from Cosmopolitan to K.C. confirms that effective October 11, 2010, she had lost her job at the company. N.T. 10/04/2011 at 80-81, 112-16.

- The "Late Pickup Form" corroborates that K.C. did not pick up her child from Little Shepherd's Daycare; instead, K.C.'s emergency contact picked up her child at 6:35pm on October 8, 2010. *Id.* at 118-20.

- Hours after the sexual assault, K.C. met her boyfriend, Joseph Grant, and told him that she had been at the Defendant's house most of the day and had been assaulted and raped by him. She said she was forced to have sex with Defendant and described the attack to him in greater detail later that night when they were alone together. *Id.* at 124-26, 238-41; N.T. 10/05/2011 at 256.

- K.C.'s hospital records document that she reported the rape to doctors and also identified her ex-boyfriend as the man who pushed, kicked, and forced her into sex with him while at his house. N.T. 10/04/2011 at 133.

Third, even if it were true that K.C. made the statements to Bey, there are several reasons why she may have made that statement, the least reasonable of which is that she was fabricating the rape.[6] For example, K.C. could have lied to Bey in an effort to end the conversation quickly because Bey was a friend of Defendant; K.C. could have reasonably believed that a satisfactory, delicate excuse would accomplish that. K.C. also could have lied to Bey because she felt intimidated or threatened by Bey for speaking with police and K.C. could have tried to reduce the threat of any retaliation by Defendant or his friends. Thus Bey's proffered testimony—even if believed by the fact-finder—has diminished value given the several credible reasons she might have lied to Bey.

Fourth, throughout the trial, K.C. adamantly, consistently, and repeatedly maintained that Defendant raped her:

COUNSEL: What happened when you got up the steps?

K.C.: Once I got up the steps, I sat down, and he sat on the chair, and he said, "You know I'm gonna fuck you, right?" and I was like -- I was just looking at him like, you know. I told him I didn't want to have sex with him.

[...]

COUNSEL: What happened after that?

K.C.: After that, he told me to perform oral sex on him. He said, "Get the dick," and I was like --

[...]

COUNSEL: All right. Did you want his penis to be in your mouth?

---

[6] During argument on the PCRA Petition, defense counsel conceded that—when confronted with Bey's testimony—K.C. would have been presented with three scenarios: (1) admit she made that statement and that the statement is true; (2) admit that she made the statement because she felt threatened by Bey and wanted to make him happy; or (3) deny making the statement to Bey. N.T. 05/08/2015 at 4.

**K.C.**: No.

**COUNSEL**: After that happened, what happened next?

**K.C.**: He told me I was gonna have sex with him. He told me I was gonna have sex with him. And I asked him, I said "Shane are you gonna rape me?" He was like, "No." I said, "Well that's what it is because I do not want to have sex with you...."

N.T. 10/04/2011 at 99-103.

In sum, the jury credited K.C.'s testimony notwithstanding the repeated attacks on her credibility and suggested motives to fabricate her testimony; there is substantial direct and circumstantial evidence at trial from independent sources that corroborated K.C.'s testimony that Defendant sexually assaulted her. Even if it were true that K.C. made the statements to Bey, there are several reasons why she would have made that statement and K.C. testified consistently at trial that Defendant sexually assaulted her. Accordingly, Defendant failed to prove that he suffered actual prejudice as a result of trial counsel's failure to confront K.C. about her alleged statements, *i.e.*, the alleged inconsistent statement would not have substantially undermined her testimony and there is no reasonable probability that the jury would have returned a favorable verdict to Defendant.

2.    The PCRA Court Properly Dismissed Defendant's Petition Alleging Ineffective Assistance of Counsel For Failing To Object To The Trial Court's Comments

In his second claim of ineffectiveness, Defendant asserts that trial counsel was ineffective for failing to object to numerous allegedly prejudicial and biased comments made by the trial court regarding counsel, the evidence, and the credibility of witnesses. As addressed at length in the sentencing court's opinion on direct appeal, none of the trial court's comments constituted reversible error. Sentencing Court Opinion (Anders, J., filed 07/01/2013) at 8. As such,

-14-

Defendant's second claim of ineffectiveness is without merit, and the PCRA court relies upon and incorporates as fully herein the analysis contained in the Sentencing Court Opinion.

Alternatively, assuming *arguendo* that this claim has arguable merit and that trial counsel did not have a reasonable basis to fail to object to the trial court's statements, Defendant's second claim of ineffectiveness fails because Defendant failed to prove the requisite prejudice. *See supra* at 8-9.

3. The PCRA Court Properly Dismissed Defendant's Petition
Alleging Ineffective Assistance of Counsel For Failing To Object
To The Jury Instruction Regarding The Aggravated Assault Charge

In his third claim of error, Defendant asserts that trial counsel was ineffective for failing to object to the trial court's instruction on aggravated assault, which was allegedly incomplete, unbalanced, inadequate, unclear, misleading, inappropriate, and prejudicial to Defendant. As addressed at length in the sentencing court's opinion on direct appeal, the trial court's instruction on aggravated assault did not constitute error. Sentencing Court Opinion (Anders, J., filed 07/01/2013) at 6-8. As such, Defendant's third claim of ineffectiveness is without merit, and the PCRA court relies upon and incorporates as fully herein the analysis contained in the Sentencing Court Opinion.

Alternatively, assuming *arguendo* that this claim has arguable merit and that trial counsel did not have a reasonable basis to fail to object to the trial court's aggravated assault instruction, Defendant's third claim of ineffectiveness fails because Defendant failed to prove the requisite prejudice. *See supra* at 8-9.

-15-

CONCLUSION

As discussed above, the PCRA court's findings are supported by the record and free of

legal error. Therefore, the Superior Court should affirm the PCRA court's dismissal of

Defendant's petition for relief under the PCRA.

BY THE COURT:

_____
DANIEL J. ANDERS, JUDGE
Dated: December 10, 2015

Commonwealth v. David Willoughby
CP-51-CR-0014671-2010
1710 EDA 2015

## PROOF OF SERVICE

I hereby certify that I am this day caused to be served the foregoing this person(s), and in the manner indicated below:

Attorney for the Commonwealth:

>Hugh Burns, Esquire
>District Attorney's Office
>Three South Penn Square
>Philadelphia, PA 19107
>Hugh.Burns@phila.gov

Type of Service:       (   ) Personal (X) Regular mail (   ) CJC mailbox (X) Email

Attorney for Defendant:

>A. Charles Peruto, Jr.
>Law Offices of A. Charles Peruto, Jr.
>2101 Pine Street
>Philadelphia, PA 19103
>chuck@peruto.com

Type of Service:       (   ) Personal (X) Regular mail (   ) CJC mailbox (X) Email

Defendant:

>David Willoughby
>DOB: 10/13/74; Inmate #KK7759
>PID: 0718435; SID: 21559024
>SCI Houtzdale
>P.O. Box 1000
>Houtzdale, PA 16698-1000

Type of Service:       (   ) Personal (X) Regular mail (   ) CJC mailbox (   ) Email

DATED: 12/10/2015

_____
Bobby Ochoa, Esquire
Law Clerk to Hon. Daniel J. Anders

-17-